UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 2:10-cr-03
    HON. ROBERT HOLMES BELL

CHRISTOPHER ROBIN PRESTON,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant Christopher Robin Preston is charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 921(a) and 18 U.S.C. § 924(a)(2). Defendant was indicted on January 12, 2010. Defendant moves to suppress his statements from a February 6, 2009, search of his residence and fingerprint evidence found on a firearm from a December 2, 2009, search and seizure of the firearm found at his residence. A hearing was held on July 2, 2010. The parties stipulated that the December 2, 2009, search and seizure of the firearm was legal and that for purposes of the hearing, defendant had four prior felony convictions.

Michigan State Police Detective Flitton testified at the hearing. Detective Flitton was a trooper at the time of the February 6, 2009, search of the residence. Detective Flitton had a warrant for Harley Defiore for a probation violation and believed that Defiore was at defendant's residence. Detective Flitton and Norway Police Officer Menard drove separately in marked vehicles to defendant's residence. When the officers arrived at the residence, they knocked on the door and

defendant spoke to the officers outside. Defendant testified that the officers knocked on the inner door of the residence and defendant spoke to them while sitting on his couch. Defendant testified that he told Detective Flitton that he would not allow a search of the residence without a warrant. Defendant's mother testified that voices were raised, but she could not hear the exact conversation. Defendant's mother stated that she was unsure if her son ever went outside, but believed that he was in the covered enclosed porch area. Defendant testified that Detective Flitton informed him that he was looking for a suspect and that he was a Michigan State Police Trooper, who could do whatever he wanted. Defendant states that the officers then pushed their way into the residence and began the search.

Detective Flitton testified that when he initially spoke with defendant, defendant would not allow him to search the residence. However, after Detective Flitton explained that he was only looking for Harley Defiore and was not planning to search the residence for anything related to defendant, defendant provided consent for the officers to enter the residence and search for the suspect. Officer Menard testified that after a brief conversation, defendant consented to the search of his residence in order to allow the officers to look for the fugitive suspect. It is undisputed that during the search, Detective Flitton discovered a long gun case in a closet at the residence which felt like it contained a gun. Detective Flitton knew that defendant had felony convictions, so he informed defendant that defendant needed to remove the rifle from the residence. The gun was not seized and no criminal charges were ever brought against defendant as a result of this search and discovery of the gun.

On December 2, 2009, defendant's landlord obtained an eviction notice. Deputy Rochon and Detective Lieutenant Metras from the Dickinson County Sheriff's Department served

the order on Stacy Witter.  Defendant was not present at the time.  Detective Lieutenant Metras completed a walk through of the residence to ensure that no one else was present.  He spotted a long gun in a partially opened gun case on top of a kitchen cabinet and a box of .30-06 caliber ammunition.  Defendant's fingerprints were found on the gun and on the box of ammunition.  Defendant argues that the fingerprint evidence should be suppressed as fruit of the unconstitutional February 6, 2009, search.

In addition to arguing that his statements made on February 6, 2009, should be suppressed, defendant contends that the exclusionary rule requires suppression of the fingerprint evidence found on the long gun found after the valid December 2, 2009, search.

> The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search.  Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes "so attenuated as to dissipate the taint."

*Murray v. United States*, 487 U.S. 533, 536-37(1988) (citations omitted).  On the other hand, the independent source doctrine provides that evidence obtained improperly will not be excluded where the challenged evidence has an independent lawful source.  *Id.*  "So long as a later, lawful seizure is genuinely independent of an earlier, tainted one (which may well be difficult to establish where the seized goods are kept in the police's possession) there is no reason why the independent source doctrine should not apply."  487 U.S. at 542.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be

violated." An officer is prohibited without a warrant from entering and searching a person's home absent consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973); *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990). The consent to search must be voluntary, without coercion or the product of duress, to be valid. *United States v. Guimond*, 116 F.3d 160, 170 (6th Cir. 1997). It is the burden of the government to show by a preponderance of the evidence, based upon the totality of all the circumstances, that consent was voluntary. *United States v. Mendenhall,* 446 U.S. 544 (1980). In *United States v. Crowder*, 62 F.3d 782 (6th Cir. 1995), the court stated:

> Because the unwarned statements in question involve a consent to search, we apply the test set forth in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and its progeny. Whether a consent to search is voluntary is a question of fact, to be proved by the government, *id.* at 222, 93 S.Ct. at 2045, and determined from the "totality of all the circumstances." *Id.* at 227, 93 S.Ct. at 2048; *see also United States vs. Scott*, 578 F.2d 1186, 1189 (6th Cir.), *cert. denied* 439 U.S. 870, 99 S.Ct. 2012, 58 L.Ed. 2d 182 (1978). Those circumstances include "evidence of minimal schooling, low intelligence, and the lack of any effective warnings to a person of his rights," *Bustamonte*, 412 U.S. at 248, 93 S.Ct. at 2058, as well as evidence concerning "the youth of the accused," "the length of detention," "the repeated and prolonged nature of the questioning," and "the use of physical punishment such as the deprivation of food or sleep." *Id.* at 226, 93 S.Ct. at 2047. Further, the accused's knowledge of his right to refuse to consent is only one factor–not a prerequisite–in establishing voluntary consent. *Id.* at 249, 93 S.Ct. at 2059.

*Id.* at 786-87.

The testimony at the hearing established that defendant gave valid consent to search his residence on February 6, 2009. The conversation that defendant had lasted only a short amount of time. While it is undisputed that defendant initially voiced his objection to allowing the officers to enter his residence, once defendant understood that Detective Flitton and Officer Menard were

looking for a suspect and not conducting an investigation of defendant, he allowed the officers to enter his residence. Moreover, neither Detective Flitton nor Officer Menard seized the gun case or used the discovery of the gun case to charge defendant with a crime. Defendant argues that his fingerprint evidence which was discovered during the unrelated December 2, 2009, seizure of the gun should be suppressed. However, defendant has not established any link between the discovery of the gun case during the February 6, 2009, search and the valid unrelated search and seizure on December 2, 2009.

Accordingly, it is recommended that defendant's motion to suppress (Docket #28) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 20, 2010